*470 Mr Justice' Johnson,
dissentiente. — Entertaining different yiews on the questions in this cause from the majority of the Court, and wishing generally that my reasons for my opinions on constitutional questions should appear, where they cannot be misunderstood or misrepresented,.! will briefly state the ground upon which I dissent from the decision now rendered.
On the first point I am of opinion, that the cause is not one within, either the letter or the policy of the 25th section .of the judiciary act.
That the suggestion and motion to, obtain a prohibition is a suit in its general sense, cannot be quéstioned; but that is not enough, to give this Court jurisdiction; it. must be' 4 suit within the meaning- and policy of the law which gives this.' writ of error. The words of the 25th section are, “ a final judgment or decree on any suit;” from which I think.it unquestionable that it must be. a suit capable of terminating in a final judgment or decree. Now a prohibition, especially where it is refused, as in this case, is not final, and concludes no body. If the party against which it was prayed goes on to carry, into effect an unconstitutional law, he to whom it was refused, is at liberty to bring .his action'of trespass, and the refusal of the 'prohibition would be no bar to ,his recovery.
Indeed, in cases of prohibition, there is no consideratum est, ho judgment entered, except, as well as I can recollect, in two cases: in that where it is first granted and then dissolved,- and a writ of consultation awarded authorizing the defendant to proceed; and in the case where the promovent .is ruled to declare, and the cause goes on to.judgment itt the usual form. When it is refused there is never a judgment entered, nor where it is granted in ordinary cases; and- hence it is laiff down generally that no writ of error lies in prohibition. There is no ground that I can perceive, to suppose that congress intended any innovation in the ordinary rules of law as to suing out writs pf error. On the contrary, in authorizing 4 writ of error to a final judgment in so many words, the legal conclusion is that they need not to adhere to the rule that a writ of error can only issue' to. recover a judgment as technically understood.
*471 Again, the suit to which this section has relation must be a suit in which this Court possesses or can exercise the power to enter judgment and award execution; because the latter part of the 25th section enacts, “ that the Supreme Court may at their discretion, if the cause shall have been once remanded before, proceed to a final decision of the same, and award. éxecution. Now if the term execution here be taken.in its ordinary technical meaning, this is not a case in which it can issue; the sole object of this.prohibition being to stay the proceedings of the city council and city sheriffunder the law complained off; and if the issuing of a prohibition be considered as coming within the meaning of execution as here used, then this Court has no power to issue's prohibition to a state, court or state officer. Congress has •not pretended to vest in it such authority. And I am well satisfied that this power has been withheld from the courts of the United States ex industria. For every provision in the constitution and the uniform policy of the government, have been to prevent the immediate action of the one govern*4 ment upon the constituted authorities of the other, a collision which it was a leading object in the constitution to avoid,, because its effects- were unavoidably and fully anticipated,
If it be asked, or has been argued, why may not this Court proceed as far as it can proceed, and reverse the judgment of the state court, on enter a judgment for apro-hibition, though it cannot issue it-; I answer,, simply because the case wants those distinctive features which are necessary to make out a case for the interference of this Courf under the 25th section. And I cannot imagine that the legislature would place this Court in the unenviable' dilemma of thus assuming ungranted powers, or of exercising jurisdiction in a case over which it could assume no coercive' power.
Hence I conclude, that neither the letter nor the policy of the law, sanctions us in exercising this jurisdiction. Nor is there the least necessity for it, since every beneficial end may be answered, when individuals are brought into controversy, by the ordinary proceedings under an unconstitu *472 tional law; anti until this.conflict of interest arise.from the actual, execution óf process, the law remains a mere “bnitum fulmen.”
My views, of the question of jurisdiction would exempt me from the necessity :of giving an opinion oníhe constituí tionality of the e$se under consideration. Rut I haye no objection to expressing my opinion upon this question.
If I could bring myself to consider, this question in the form in which it is considered by the majority of the Court^ I should certainly concur in the opinion, that the tax was unconstitutional. For,, the exercise of a-power, which, under the mask of imposing a tax, may defeat or impede the operation of the government of the United States in borrow--ing money, could not he tolerated. But I am strongly .impressed wi th , the opinion, that the record does not .authorise this state óf the question.. It . is true the. act of the,city council; of Charleston,' which imposes. this tax, is most clumsily worded. But I think it clear that, taken? together, the object is to impose an income tax. This, I think, is ne-. cessarily inferred from the fact, that the tax is not imposed upon money at . interest generally, but only on so, much as the .individual has at interest above what he owes, or pfiys an interest..upon. The operation of this .is to charge no more than his clear income from money at interest. It is objected, that they make discriminations, and exempt from taxation state stock,, city stock, and stock of their own chartered, banks. But then they exempt also, stock-of the United States bank; and there.can be no,better .proof de^ mftnded to show, .that the law is. conceived in the spirit, of fairness, with a view to revenue, and. no masked attack upon the power's of the general government. Had they, in fact, taxed any one of these excepted objects, we should have hád .the law brought up here as a violation, of the obligation of contracts; since the. statute books of the state will show, that all their banks, with the exception of the state bank, havé paid a bonus to the state. And it would have been impossible, to tax the state bank, because the stock is áltogether owned, by the state, and the laws of the council are subject to be repealed' by the state.
*473 As to the specification of six and seven per cent, stock of the. United States as objects of taxation, this also admits of an explanation, showing that the council acted in the spirit of fairness and candour, although certainly not happy in expressing the legislative mind. This specification became necessary, frdm their imposing the tax by means of a per centage of twenty-five cents upon' the Capital at interest, instead of a per centage on the interest received; Hence to have brought the four and three per cent, stock of the United States under the tax, would have been unequal and unjust; and there can belittle doubt that to avoid this inequality was their object.
I consider the case , therefore as one of a tax upon income arising from the interest of money, a.very unwise and suicidal tax unquestionably, and not very judiciously arranged and expressed; but still characterized by no unfairness, and no masked attack upon, the powers of the general government. And if so, with what correctness can it be characterized as' unconstitutional ?
Why should not the stock of the United States, when it becomes mixed up with the capital of its citizens, become subject to taxation in common with other capital? Or why should one who enjoys all the advantages of a society purchased at a heavy expense, and lives in affluence upon an income derived exclusively from interest on government stock, be exempted from taxation ?
No one imagines that it is ter be singled out and marked as an object of persecution, and that.á law professing to tax, will be permitted to destroy: this subject was sufficiently1 explained in M’Gullock’s"case. But why should the states be held to confer a bonus or bounty on the loans made by the ■general government? The question is not whether their stock is to be exposed to peculiar burthens; but whether it shall eDjoy privileges and exemptions, directly interfering with the power of the states to tax or to borrow;
I . can see no reason for the exemption, and certainly ean-not acquiesce in it